JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Evette Houston

**(b)** County of Residence of First Listed Plaintiff  New Castle, DE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ryan R. Grace, Bellwoar Kelly, LLP
126 W. Miner St. West Chester, PA 19382 (610 314

## DEFENDANTS

Chester Community Charter School CSMI LLC, David Clark, Mark Rattinieri

County of Residence of First Listed Defendant  Delaware, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2000 and 42 U.S.C. 1981
Brief description of cause:
Racial Discrimination in Employment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$150,000 +

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE  6/9/25

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVETTE HOUSTON | : | |
| 23 LAMBSON LANE | : | |
| NEW CASTLE, DE 19720, | : | |
| PLAINTIFF | : | |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| CHESTER COMMUNITY | : | |
| CHARTER SCHOOL | : | |
| 214 EAST 5TH STREET | : | |
| CHESTER, PA 19013 | : | |
| AND | : | |
| CSMI, LLC | : | A CIVIL ACTION |
| 419 AVENUE OF THE STATES | : | DOCKET NUMBER : |
| CHESTER, PA 19013 | : | 25 – CV – 2935 |
| AND | : | |
| DAVID CLARK | : | |
| 612 7TH AVENUE | : | |
| SWARTHMORE, PA 19081 | : | |
| AND | : | |
| MARK BATTINIERI | : | |
| 337 BROOKSIDE DRIVE | : | |
| OXFORD, PA 19363, | : | |
| DEFENDANTS | : | JURY TRIAL DEMANDED |

<u>COMPLAINT</u>

Filed on June 9, 2025 by:
**BELLWOAR KELLY, LLP**
126 W. Miner Street
West Chester, PA 19382
(610)314-7066

Ryan R. Grace, Partner
PA Attorney ID: 307192
*rgrace@bellwoarkelly.com*

Evette Houston, by and through undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e, et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 955(a), et seq., have been violated and avers as follows:

## THE PARTIES

1. Plaintiff Evette Houston ("Plaintiff") is an adult individual and citizen of the State of Delaware, residing therein at 23 Lambson Ln. New Castle, DE 19720.

2. Plaintiff is an African-American.

3. Defendant, Chester Community Charter School ("Defendant School") was, at all relevant times hereto, a non-profit corporation organized and existing according to the laws of the Commonwealth of Pennsylvania, with a registered office address of 214 E. 5th St. Chester, PA 19013 and an entity number of 2784511.

4. Defendant, CSMI, LLC ("Defendant CSMI"), was at all relevant times hereto a Limited Liability Company, organized and existing according to the laws of the Commonwealth of Pennsylvania, with a registered office address of 419 Avenue of the States, Chester, PA 19013 and an entity number of 3836129.

5. Defendant CSMI is the owner and operator of Defendant School.

6. All members of CSMI's "management team," as identified by its website, are Caucasian.

7. Defendant, David Clark ("Defendant Clark") is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 612 7th Ave. Swarthmore, PA; at all relevant, he was the Chief Executive Officer of Defendant School.

8. Defendant, Mark Battinieri ("Defendant Battinieri") is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 337 Brookside Dr. Oxford, PA 19363; at all relevant times, he was the Chief Operating Officer of Defendant School.

9. At all relevant times hereto, Defendant School, Defendant CSMI, Defendant Clark, and Defendant Battinieri had extensive, continuous, regular and systematic business contacts in the Eastern District of Pennsylvania.

## JURISDICTION

10. Jurisdiction over this controversy is properly vested in the United States District Court pursuant to 28 U.S.C. §1331, as it is a civil action arising under the Constitution and laws of the United States of America.

11. Jurisdiction over this controversy is further vested in the United States District Court pursuant to 29 U.S.C. §1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $150,000.00 exclusive of interest and cost

12. Supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1367.

## VENUE

13. This matter is properly addressed in the venue of the United States District Court for the Eastern District of Pennsylvania, because a substantial part of the events, acts and omissions by Defendants giving rise to Plaintiff's claim occurred in the Commonwealth of Pennsylvania and jurisdiction of this Court, more specifically, in the City of Chester, Delaware County.

## FACTS AT ISSUE

14. The Plaintiff was abused by the Defendants, subjected to institutionalized racism and discriminatory mistreatment of employees by the owners and administrators of a charter school in Chester, PA.

15. From 2017 until 2024, the Plaintiff was employed by Defendant School and Defendant CSMI; specifically, Plaintiff worked for Defendant CSMI from 2017 through 2019 and then for Defendant School from 2019 until 2024.

16. Defendant School is a charter school that was first opened in the City of Chester by Defendant CSMI in the late 1990s, shortly after the city's school district began to experience massive financial difficulties; it

employed in excess of fifteen employees for each working day in more than twenty calendar weeks of the year preceding the events giving rise to this complaint.

17. At all relevant times, Defendant CSMI owned and operated Defendant School, and employed in excess of fifteen employees for each working day in more than twenty calendar weeks of the year preceding the events giving rise to this complaint.

18. At all relevant times, Defendant CSMI was directly responsible for management and oversight of Defendant School; specifically, a former version of Defendant School's website admitted "Defendant CSMI "takes care of all the back-office and business functions of the school," including "accounting, food service, human resources, scheduling, compliance reporting requirements, professional development programs, event coordination, school safety, and technology."

19. At all relevant times, Defendant Clark was employed by Defendant School and/or Defendant CSMI as the Chief Executive Officer of Defendant School.

20. At all relevant times, Defendant Battinieri was employed by Defendant School and/or Defendant CSMI as the Chief Operating Officer of Defendant School.

21. Though Defendant School is a non-profit entity, it is a wholly owned subsidiary of the for-profit enterprise that is Defendant CSMI.

22. Plaintiff suffered directly from a racially discriminatory workplace and she was unlawfully terminated in retaliation for expressing objection to the discriminatory practices of Defendant School, Defendant CSMI, Defendant Clark, and Defendant Battinieri.

23. Throughout Plaintiff's tenure with Defendant School, and for many years prior, Defendant School and Defendant CSMI created and fostered a workplace of intense and pervasive racial discrimination against African American employees.

24. Members and/or agents of Defendant CSMI personally harbor discriminatory views toward African-Americans and/or frequently demonstrate a bias against African-Americans.

25. African-American employees at both Defendant School and Defendant CSMI are subjected to disparate and inferior treatment and work conditions on the basis of their race.

26. The Plaintiff was hired by Defendant CSMI in 2017 to work as a "grant writer."

27. Defendant CSMI paid the Plaintiff less than similarly situated Caucasian employees.

28. Other employee of Defendant CSMI admitted to Plaintiff that her compensation was inappropriately low.

29. The Plaintiff transitioned to work at Defendant School in 2019.

30. At Defendant School, the Plaintiff was again employed as a "grant writer."

31. Defendant School also placed Plaintiff into the dual role of "project manager."

32. The Plaintiff did not receive additional compensation for her dual role with Defendant School.

33. Defendant School paid the Plaintiff substantially less than similarly situated Caucasian employees.

34. All Defendants, collectively, individually, and through various agents, engaged in a pattern of disparate treatment against African-American employees at Defendant School, which Plaintiff both suffered and was forced to witness, specifically:

    a. Defendant School, Defendant CSMI, and Defendant Clark continuously disciplined African American employees more harshly for the same or similar infractions than they did with Caucasian employees.

    b. African American employees were routinely criticized and demoted for minor infractions while Caucasian employees were routinely defended for the same or similar infractions.

    c. Agents of Defendant School and Defendant CSMI, as well as Defendant Clark and Defendant Battinieir, routinely addressed

African-American employees with more demeaning tones than those directed at Caucasian employees.

d. Agents of Defendant School and Defendant CSMI, as well as Defendant Clark and Defendant Battinieiri, demonstrated a pattern of denying lucrative and advantageous work assignments to African American employees and granting such assignments instead to Caucasian employees, despite the African American employee possessing objectively greater qualifications, such as more advanced educational degrees and/or more extensive experience in the pertinent field.

e. Agents of Defendant School and Defendant CSMI, as well as Defendant Clark and Defendant Battinieiri, regularly dismissed plans, suggestions, and requests made by more qualified experienced African-American employees and instead adopted plans, suggestions, and requests made by less qualified and experienced Caucasian employees.

f. African American employees were frequently assigned to extra tasks outside the classroom, in the hallways and after school, but ignored and denied by Defendant School when they asked for extra compensation; Caucasian employees were not subjected to this treatment.

g. The Defendants routinely permitted racially offensive remarks directed at students and admonished employees that objected to such remarks; specifically, an employee of Defendant School regularly referred to African American students as "monkeys," and was not reprimanded or corrected by superiors at Defendant School.

h. The Defendants routinely permitted racially offensive remarks, such as "African-American parents can help their children with math homework...only until about first grade," and the Defendants admonished African-American employees when they objected to such remarks.

i. Caucasian employees were routinely permitted to be absent, even for extended periods; African American employees were reprimanded and even terminated for being absent from work.

35. Many of the administrators and supervisors of Defendant School are, themselves, African American; however, the members of Defendant CSMI actively foster a system wherein African American administrators and supervisors of Defendant School are forced to choose between supporting a systemic inferiority for African Americans in the workplace, or risk suffering as an increased target of mistreatment.

36. Defendant Clark is African-American, yet he intentionally and unabashedly enforces racial animus and disparate treatment of African-Americans.

37. As Chief Executive Officer of Defendant School, Defendant Clark willfully imposed disparate treatment and adverse employment conditions upon subordinate African American employees as well as intentionally inflicted harsh retaliation against any employees objecting to the unlawful work environment.

38. Defendant Battinieri is Caucasian; he works very closely with Defendant Clark in fostering the discriminatory workplace at issue and utilizes Defendant Clark to make it appear that instances of disparate treatment toward an African-American employee have the support of a person of color.

39. Defendant Clark and Defendant Battinieri, along with other agents of Defendant School enforced, promoted, and defended the racially discriminatory workplace of Defendant School at the explicit direction of members of Defendant CSMI.

40. When confronted about the discriminatory practices of Defendant CSMI within Defendant School, Defendant Clark has admitted that "[Defendant CSMI members] are racist and all they care about is money."

41. When employees expressed frustration to Defendant Clark about the disparate treatment of African-American employees, Defendant Clark routinely explained that "African-American employees have to work harder" at Chester Community Charter School than white employees do.

42. Defendant Clark frequently used the phrase "African-American employees have to work harder" when employees expressed frustration at the routine selection of less qualified Caucasian individuals over more qualified African-American for preferential work assignments, as well at the routine adoption of plans, suggestions, and requests made by less qualified experienced Caucasian employees over the plans, suggestions, and requests made by more qualified and experienced African-American employees.

43. When African-American employees expressed objection to the discriminatory practices, they suffered increased discriminatory treatment and were regularly fired or forced to resign.

44. African-American employees, fired or forced to resign, were routinely replaced with other African-American individuals; Defendant Clark admitted that such replacements were intentionally chosen to maintain a predominately African-American staff within the majority African-American community, and that Defendant CSMI "only wanted black administrators."

45. Defendant School and Defendant CSMI pay their owners and administrators a higher percentage of total expenditure than almost any other charter school in the Commonwealth of Pennsylvania.

46. Though the students of School have consistently performed worse in standardized assessments than the students of Chester City's school district, Defendant School has nonetheless grown over the years to serve approximately half of the city's entire student population.

47. The student population of Defendant School is almost entirely composed of persons of color.

48. Employees of Defendant School and Defendant CSMI frequently suggested or implemented policies that may have been profitable to Defendant CSMI, but harmful to the students, and often amounting to violations of the students' educational and civil rights.

49. When Plaintiff or other African American employees voiced objections to policies and practices that may be harmful to the students, Defendant School, Defendant CSMI, Defendant Clark and Defendant Battinieri habitually defended the policies and even admonished employees for voicing an objection.

50. In February 2023, the Plaintiff pressed for appropriate compensation; Defendant Clark and Defendant Battinieri reacted harshly to the Plaintiff, belittling and intimidating her about the request, which was denied.

51. Through the remainder of 2023, the Plaintiff was increasingly targeted with mistreatment, demeaning tones, and reduced authority over her work.

52. By early 2024, Defendant Clark and Defendant Battinieri engaged in coordinated efforts to obstruct the Plaintiff's ability to perform her job requirements.

53. The Defendants continued to escalate hostility toward the Plaintiff such that, by summer 2024, medical professionals certified the Plaintiff for medical leave due to psychological damage caused by the discrimination.

54. The Plaintiff took leave from employment under the Family Medical Leave Act ("FMLA") in August 2024.

55. Despite proper utilization of her FMLA rights, Defendant School continued to pressure the Plaintiff to work from home in September 2023.

56. Despite proper utilization of the Plaintiff's FMLA rights, Defendant School and/or Defendant CSMI made efforts to fill her position while she was on FMLA leave.

57. In October 2024, the Plaintiff requested an extension of FMLA leave, and supplied medical documentation in support of her request.

58. Defendant School and/or Defendant CSMI granted a short extension of FMLA leave to the Plaintiff, though less than the amount of time specified as appropriate by her medical documentation.

59. Defendant School and/or Defendant CSMI terminated the Plaintiff from employment on December 19, 2024.

60. Defendant School and/or Defendant CSMI made no attempt to offer reasonable accommodation to the Plaintiff before terminating her employment.

61. Plaintiff suffered acute mental distress from exposure to a racially discriminatory workplace.

62. After complaints, Plaintiff suffered increased mental distress from the continued racist environment as well as from the unlawful retaliation in response to his objections.

63. The Plaintiff sought professional therapy to cope with the negative mental effects caused by Defendants' unlawful practices, including but not limited to: anxiety, increased stress and irritability, paranoia, decreased confidence, difficulty sleeping, and a diminution of the enjoyment of her profession.

64. The Plaintiff suffered lost back wages, because Defendant School and Defendant CSMI underpaid the Plaintiff for her work based on discriminatory intent.

65. Plaintiff suffered extended economic loss, and lost future wages, after her termination.

66. Plaintiff suffered extended mental stress and emotional distress from the humiliation and dehumanizing effects of the racial discrimination.

67. As a victim of open racial discrimination in her workplace, Plaintiff suffered a diminution of enjoyment of life.

68. Plaintiff filed a formal charge with the U.S. Equal Employment Opportunity Commission on March 6, 2025 under number 530-2025-04141, and Plaintiff received a Right to Sue Letter on March 11, 2025.

69. Plaintiff has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## COUNT I
## VIOLATION of CIVIL RIGHTS ACT, TITLE XII
### *Plaintiff v. Defendant School*

70. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

71. Defendant School created an unlawful racially abusive workplace environment, in violation of 42 U.S.C.A. § 2000e.

72. Specifically Defendant School discriminated against Plaintiff with respect to conditions of employment because of Plaintiff's race, in violation of 42 U.S.C.A. § 2000e-2(a).

73. The constant disparate treatment of African-American employees as well as retaliation against Plaintiff when he objected to the racially disparate treatment amount to "sufficiently severe or pervasive to alter the conditions of

Plaintiff's employment," *see* <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129 (2004).

74. Defendant School created a hostile workplace environment under Title VII of the Civil Rights Act because all of the following conditions are met:

    a. "Plaintiff suffered intentional discrimination because of his race;

    b. the discrimination was pervasive and regular;

    c. the discrimination detrimentally affected Plaintiff;

    d. the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and

    e. there is a basis for respondeat superior liability," *see* <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 (3d. Cir. 1997).

75. Defendant School unlawfully terminated Plaintiff in retaliation for objecting to unlawful employment practices in violation of 42 U.S.C.A. § 2000e-3(a).

76. By fostering blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace, Defendant SCHOOL engaged in discriminatory practices intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant School in excess of $150,000, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages

for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT II
## VIOLATION of CIVIL RIGHTS ACT, TITLE XII
### *Plaintiff v. Defendant CSMI*

77. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

78. During times that Plaintiff was directly employed by Defendant CSMI, she suffered from disparate employment treatment due to her race, specifically including lower compensation and reduced responsibilities than similarly situated Caucasian employees of Defendant CSMI.

79. Defendant CSMI is also liable for the actions of Defendant School under the principle of respondeat superior.

80. The board members of Defendant CSMI directed Defendant School and its agents to implement racially disparate treatment among employees of Defendant School.

81. Defendant CSMI conspired with Defendant School to create a racially hostile workplace in Defendant School in violation of 42 U.S.C.A. § 2000e-2(a).

82. Defendant CSMI tolerated and defended racially offensive behavior of Defendant School and Defendant Clark directed at African-American employees of Defendant School in violation of 42 U.S.C.A. § 2000e-2(a).

83. Defendant CSMI directed agents of Defendant School to terminate Plaintiff from employment with Defendant School in retaliation for Plaintiff's objections to the racially discriminatory workplace of Defendant School in violation of 42 U.S.C.A. § 2000e-3(a).

84. Defendant CSMI created a hostile workplace environment under Title VII of the Civil Rights Act.

85. By fostering blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace, Defendant CSMI engaged in discriminatory practices intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant CSMI in excess of $150,000, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT III
## VIOLATION of FAMILY MEDICAL LEAVE ACT
### *Plaintiff v. Defendant School*

86.    Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

87.    Defendant School deprived the Plaintiff of her rights under the Family Medical Leave Act ("FMLA").

88.    The Plaintiff was entitled to FMLA leave and properly invoked her rights, pursuant to 29 U.S.C. §§ 2612, 2613.

89.    Agents of Defendant School pressured the Plaintiff to perform employment activities while she was on FMLA leave, in violation of 29 U.S.C. § 2614.

90.    Defendant School actively sought a replacement for Plaintiff's position while the Plaintiff was on FMAL leave, in violation of 29 U.S.C. § 2614.

91.    When Plaintiff requested additional leave for her medical condition, Defendant School terminated her employment, without offering for her to return to work as scheduled or other reasonable accommodation, in violation of 29 U.S.C. § 2614.

92.    Defendant School's unlawful interference with her FMLA rights exacerbated her medical condition and caused her substantial pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant School in excess of $150,000,

for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT IV
## VIOLATION of FAMILY MEDICAL LEAVE ACT
### *Plaintiff v. Defendant CSMI*

93.  Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

94.  Defendant CSMI directed Defendant School to deprive the Plaintiff of her FMLA rights.

95.  The Plaintiff was entitled to FMLA leave and properly invoked her rights, pursuant to 29 U.S.C. §§ 2612, 2613.

96.  Agents of Defendant CSMI pressured the Plaintiff to perform employment activities while she was on FMLA leave, and/or directed Defendant School to do so, in violation of 29 U.S.C. § 2614.

97.  Defendant CSMI actively sought a replacement for Plaintiff's position while the Plaintiff was on FMAL leave, and/or directed Defendant School to do so, in violation of 29 U.S.C. § 2614.

98.  When Plaintiff requested additional leave for her medical condition, Defendant CMSI terminated her employment, without offering for her to

return to work as scheduled or other reasonable accommodation, and/or directed Defendant School to do so, in violation of 29 U.S.C. § 2614.

99.    Unlawful interference with her FMLA rights exacerbated her medical condition and caused her substantial pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant CSMI in excess of $150,000, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT V
### VIOLATION of 42 U.S.C. § 1981
#### *Plaintiff v. Defendant Clark*

100.    Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

101.    Defendant Clark was the face of and the front line of the discriminatory practices implemented by Defendant School and Defendant CSMI.

102.    Defendant Clark was personally involved in the racial discrimination against the Plaintiff, he intentionally caused the infringement of Section

1981 rights, and/or he authorized, directed, or participated in the discriminatory conduct.

103. Defendant Clark's conduct directly caused serious harm to the Plaintiff, calling for reward of compensatory and punitive damages.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant Clark in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT VI
## VIOLATION of 42 U.S.C. § 1981
### *Plaintiff v. Defendant Battinieri*

104. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

105. Defendant Battinieri was the face of and the front line of the discriminatory practices implemented by Defendant School and Defendant CSMI.

106. Defendant Battinieri was personally involved in the racial discrimination against the Plaintiff, he intentionally caused the infringement of Section

1981 rights, and/or he authorized, directed, or participated in the discriminatory conduct.

107. Defendant Battinieri's conduct directly caused serious harm to the Plaintiff, calling for reward of compensatory and punitive damages.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant Battinieri in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT VII
## VIOLATION of PENNSYLVANIA HUMAN RELATIONS ACT
### *Plaintiff v. Defendant School*

108. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

109. Based on the foregoing, Plaintiff alleges that Defendant School violated the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

110. Plaintiff alleges that all Defendant School further violated the Pennsylvania Human Relations Act by retaliating against Plaintiff for her making complaints of racial discrimination in the form of reduced

responsibility, negative conditions and privileges of employment, and termination her employment with Defendant School.

111.   Defendant School caused Plaintiff to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, sustained work loss, and permanent diminution of her earning power and capacity, and a claim is made therefore.

112.   Plaintiff demands attorney's fees and court costs.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant School in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT VIII
## VIOLATION of PENNSYLVANIA HUMAN RELATIONS ACT
### *Plaintiff v. Defendant CSMI*

113.   Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

114.  Based on the foregoing, Plaintiff alleges that Defendant CSMI violated the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

115.  Plaintiff alleges that Defendant CSMI further violated the Pennsylvania Human Relations Act by retaliating against Plaintiff for her making complaints of racial discrimination in the form of reduced responsibility, negative conditions and privileges of employment, and termination of her employment with Defendant School.

116.  All Defendants caused Plaintiff to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, sustained work loss, and permanent diminution of her earning power and capacity, and a claim is made therefore.

117.  Plaintiff demands attorney's fees and court costs.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant CSMI in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT IX
## VIOLATION of PENNSYLVANIA HUMANS RELATIONS ACT
### *Plaintiff v. Defendant Clark*

118. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

119. Defendant Clark was the face of and the front line of the discriminatory practices implemented by Defendant School and Defendant CSMI.

120. Defendant Clark personally and individually aided, abetted, incited, compelled, and coerced discriminatory practices at Defendant School.

121. Defendant Clark willfully and regularly treated African-American employees more harshly than Caucasian employees in violation of 43 P.S. § 955(a).

122. Defendant Clark frequently denied more lucrative and desirable assignments to higher qualified African-American employees and instead granted those assignments to Caucasian employees in violation of 43 P.S. § 955(a).

123. Defendant Clark routinely tolerated and allowed racially offensive remarks in the workplace of Defendant School in violation of 43 P.S. § 955(a).

124. Defendant Clark routinely admonished African-American employees for objecting to racially offensive remarks in the workplace of Defendant School in violation of 43 P.S. § 955(a).

125. When confronted about the racially discriminatory workplace of Defendant School, Defendant Clark openly admitted the unlawful practices to Plaintiff and other employees.

126. Defendant Clark actively retaliated against Plaintiff and other employees for objecting to the racially discriminatory environment of Defendant School in violation of 43 P.S. § 955(a).

127. By fostering blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace, Defendant Clark engaged in discriminatory practices intentionally, with malice, and with reckless indifference to Plaintiff's protected rights.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant Clark in excess of $150,000, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT X
## VIOLATION of PENNSYLVANIA HUMANS RELATIONS ACT
### *Plaintiff v. Defendant Battinieri*

128.  Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

129.  Defendant Battinieri was the face of and the front line of the discriminatory practices implemented by Defendant School and Defendant CSMI.

130.  Defendant Clark personally and individually aided, abetted, incited, compelled, and coerced discriminatory practices at Defendant School.

131.  Defendant Battinieri willfully and regularly treated African-American employees more harshly than Caucasian employees in violation of 43 P.S. § 955(a).

132.  Defendant Battinieri frequently denied more lucrative and desirable assignments to higher qualified African-American employees and instead granted those assignments to Caucasian employees in violation of 43 P.S. § 955(a).

133.  Defendant Battinieri routinely tolerated and allowed racially offensive remarks in the workplace of Defendant School in violation of 43 P.S. § 955(a).

134.  Defendant Battinieri routinely admonished African-American employees for objecting to racially offensive remarks in the workplace of Defendant School in violation of 43 P.S. § 955(a).

135. Defendant Battinieri actively retaliated against Plaintiff and other employees for objecting to the racially discriminatory environment of Defendant School in violation of 43 P.S. § 955(a).

136. By fostering blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace, Defendant Clark engaged in discriminatory practices intentionally, with malice, and with reckless indifference to Plaintiff's protected rights.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant Battinieri in excess of $150,000, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

Respectfully submitted,

Ryan R. Grace
*Attorney for the Plaintiff*

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: ___Chester City, Delaware County, PA_____

---

*RELATED CASE IF ANY:*  Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                            Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
   individual?

5. Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☑ **is not** related to any pending or previously terminated
action in this court.

---

**Civil Litigation Categories**

*A.  Federal Question Cases:*

☐ 1.   Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.   FELA
☐ 3.   Jones Act-Personal Injury
☐ 4.   Antitrust
☐ 5.   Wage and Hour Class Action/Collective Action
☐ 6.   Patent
☐ 7.   Copyright/Trademark
☑ 8.   Employment
☐ 9.   Labor-Management Relations
☐ 10.  Civil Rights
☐ 11.  Habeas Corpus
☐ 12.  Securities Cases
☐ 13.  Social Security Review Cases
☐ 14.  Qui Tam Cases
☐ 15.  Cases Seeking Systemic Relief *see certification below*
☐ 16.  All Other Federal Question Cases. *(Please specify):*_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1.   Insurance Contract and Other Contracts
☐ 2.   Airplane Personal Injury
☐ 3.   Assault, Defamation
☐ 4.   Marine Personal Injury
☐ 5.   Motor Vehicle Personal Injury
☐ 6.   Other Personal Injury *(Please specify):*_____
☐ 7.   Products Liability
☐ 8.   All Other Diversity Cases:  *(Please specify)*_____
         _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications
beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or
federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory
judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the
money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a
violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.